# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

IN RE: DIGITEK PRODUCTS LIABILITY LITIGATION     MDL No. 1968

**This Order Applies to:**

SUSAN TABOR AND
HAROLD TABOR,

      Plaintiffs

v.                                                                                                       Civil Action 2:09-0191

ACTAVIS INC. and
ACTAVIS ELIZABETH, LLC and
ACTAVIS TOTOWA, LLC and
MYLAN PHARMACEUTICALS, INC. and
MYLAN, INC.,

      Defendants

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiffs' motion to remand [Dckt. 5]. For the reasons that follow, I **DENY** the motion.

### I.

On October 24, 2008, the Tabors instituted this civil action in the Seventeenth Judicial District Court in the Parish of Lafourche, Louisiana. Ms. Tabor alleges that she suffered a stroke after taking a dose of Digitek. It was later determined that she had a toxic level of digoxin in her bloodstream at the time of the stroke. After being hospitalized for five days, Ms. Tabor returned home and eventually "made a slow, but full recovery." (Compl. ¶ 8). Ms. Tabor was later informed by her pharmacy that the Digitek she had taken had been recalled because the tablets were possibly

twice the appropriate thickness, and twice the dose, as reflected on the label.  Ms. Tabor seeks damages for (1) past and future medical bills, (2) past and future physical and mental pain and suffering, (3) past and future lost wages, (4) loss of earning capacity, and loss of enjoyment in the quality of life, "including any and all disability." (*Id.* ¶ 13.J).   Mr. Tabor seeks recovery for loss of consortium and for the grief and mental anguish he suffered as a result of Ms. Tabor's illness.  The last allegation of the Tabors' complaint states "[p]laintiffs submit that their damages, exclusive of interest and costs, do not exceed $75,000.00." (*Id.* ¶ 16; Pls.' Memo. in Supp. ¶ 11 (observing also that "Plaintiffs' petition does not specifically allege the sum of the damages.")).  It does not appear the Tabors have filed a binding stipulation or affidavit with their complaint stating that their recovery will be less than $75,000.

On December 2, 2008, Defendants removed to the United States District Court for the Eastern District of Louisiana.[1]  Defendants allege as follows:

> After commencement of the suit, the Plaintiffs' produced over 200 pages of medical records and bills pertaining to Mrs. Tabor's hospitalization. These records reveal that Mrs. Tabor incurred greater than $14,000 in medical bills for her five day hospitalization alone. These records also show that Mrs. Tabor underwent radiographic testing which revealed "chronic appearing cerebellar hemisphere infarct [death of brain tissue] peripherally and multiple subcortical lacunar infarcts bilaterally."

(Not. of Remov. ¶ 7).  On December 15, 2008, the Tabors moved to remand.  They contend the amount in controversy is not satisfied.  The basis for remand is stated as follows:

> Although plaintiffs allege Mrs. Tabor did suffer damage as a result of taking the

---

[1] The Judicial Panel on Multidistrict Litigation was contemporaneously notified of the suit for tag-along transfer to MDL 1968 through issuance of a conditional transfer order. Although the plaintiffs filed notice of opposition to the proposed conditional transfer order, they subsequently failed to file the required motion and brief to vacate the proposed order and the hearing session order on the opposition was vacated.

> defective drug, plaintiffs also allege in their petition, "After five days in the hospital, Mrs. Tabor was able to return home, where she made a slow but full recovery from her stroke." Thus, plaintiffs' injuries, though serious, are complete and there are no residual effects. . . .
>
> Despite all of the ominous remarks made in the defendants' removal notice about the seriousness of Susan Tabor's injuries (which they will presumably attempt to belittle once a trial is held to determine her damages), the defendants cannot overcome the fact that the incident was transient and that there have been no indications of any lasting effects from this incident.

(Mot. to Rem. ¶¶ 11-12).[2] The parties are in agreement that they are diverse from one another.

In response, Defendants sought a stay of the proceedings pending transfer. In the alternative, however, they asserted that the jurisdictional amount was met, relying essentially upon their allegation in the notice of removal that I reproduced above. The Honorable Helen G. Berrigan, United States District Judge, deferred ruling on the remand motion and granted Defendants' motion to stay. The case was transferred to this District on March 4, 2009.

II.

The leading commentators on federal practice have concisely set forth the choice-of-law rules applicable in the transferee court assigned a multidistrict litigation action:

> It appears to be reasonably well established, given the plethora of cases on the point, that in actions in which a federal court would be guided or governed by state law, the transferee court is bound to apply the law that the transferor court would follow; this issue most commonly arises in diversity of citizenship cases or with regard to issues in federal question cases controlled by state law. However, in cases involving federal questions, the transferee court follows the interpretation of federal law that has been

---

[2]The Tabors also requested oral argument on the motion to remand. The facts and legal contentions are straightforward. I do not believe oral argument would aid the decisional process. I **DENY** the request for oral argument.

3

> established by its own court of appeals, although this principle, as some of the citations in the note below indicate, does not have universal acceptance. As a general proposition, however, the application of federal law, as defined by the transferee court's circuit has the advantage of producing a single governing law rather than multiple constructions of federal law that might exist in the different circuits of the several transferor courts.

15 Charles A. Wright *et al.*, *Federal Practice and Procedure,* § 3866 (3rd ed. 2009) (footnotes omitted). The law in this Circuit is in accordance with the observations of Professor Wright and his colleagues.. *See*, *e.g.*, *Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998).

Specific to MDL cases, and subject matter jurisdiction generally, the Honorable Shira A. Scheindlin recently observed that the law of the transferee circuit applies:

> [C]ourts have held that the law of the transferee circuit controls pretrial issues such as whether the court has subject matter or personal jurisdiction over the action, or whether the cases should be remanded to state court because the cases were not properly removed.

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007) (footnote omitted). Judge Scheindlin's observation, as noted in her opinion, reflects the general approach. *See*, *e.g.*, *In re Linerboard Antitrust Litig.*, No. 04 Civ. 4001, MDL 1261, 2005 WL 1625040 (E.D.Pa. July 11, 2005) (applying the law of the Third Circuit on a motion to dismiss for lack of subject matter jurisdiction); *In re MTBE Prods. Liab. Litig.*, 2005 WL 106936, at *5 (S.D.N.Y. 2005) (applying the law of the Second Circuit on a motion to dismiss for lack of personal jurisdiction); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 256 F. Supp.2d 884 (S.D. Ind. 2003) (applying the law of the Seventh Circuit on a motion for remand to state court). As one might expect, the same rule appears to apply to amount-in-controversy determinations. *See*, *e.g.*, 32A Am. Jur. 2d *Federal Courts* § 1520 (2007) ("[B]ecause whether the relief sought exceeds the statutory minimum necessary for diversity jurisdiction is a question of federal law, the law of

the circuit where the transferee court sits governs the determination of that question.").

Nevertheless, I need not now definitively resolve this choice-of-law issue. The law governing whether the amount-in-controversy is satisfied is essentially the same in both this District and the Eastern District of Louisiana. *Compare Sayre v. Potts*, 32 F. Supp.2d 881, 883-84 (S.D. W. Va.1999), *with Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a). Courts construe removal jurisdiction strictly because of the significant federalism concerns removal implicates. *Maryland Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir.2005). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994). The burden of establishing federal jurisdiction is on the party seeking removal. *Id.* Accordingly, when federal jurisdiction is based on diversity under 28 U.S.C. § 1332, the defendant bears the burden of proving that the suit is between citizens of different states and that the amount in controversy exceeds the jurisdictional amount of $75,000. *See Sayre*, 32 F. Supp.2d at 883-84.

Where the original complaint does not state a specific damages amount, the defendant must prove by a preponderance of the evidence, *i.e.*, that it is more likely than not, that the amount in controversy exceeds $75,000. *Sayre*, 32 F. Supp.2d at 886. "To satisfy this burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000." *Id.* Rather, the defendant must supply some evidence to support his claim regarding the amount in controversy. *Id.*; *see also Manguno*, 276 F.3d at 723 ("Th[e proof] requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant

5

sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount.").

In addressing the propriety of removal, courts look to "the record existing at the time the petition for removal was filed." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938)). "Specifically, the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal." *Id.* A court can consider, for example, the type and extent of the plaintiff's injuries set forth in the complaint and the possible damages recoverable. *Sayre*, 288 F. Supp.2d at 886. Importantly, "in reaching a conclusion with regard to the amount in controversy based upon this evidence, the court 'is not required to leave its common sense behind.' " *Id.* at 886-87 (quoting *Mullins v. Harry's Mobile Homes Inc.*, 861 F. Supp. 22, 24 (S.D. W. Va.1994)).

### III.

While the Tabors stress in their remand motion that Ms. Tabor has made a full recovery and their damages do not exceed $75,000, I must view the record as a whole at the time of removal. That record does not specifically allege the sum of the damages; however, it is facially apparent that the amount in controversy is likely to exceed $75,000. The court notes that Ms. Tabor was forced to undergo hospitalization for five days after she began to suffer the signs and symptoms of a stroke and this resulted in nearly $15,000 in past medical bills alone. This is in addition to an admitted "slow" recovery from the diagnosed stroke and toxic level of digoxin in her blood and the associated petitions for future medical expenses, past and future loss of wages, physical and mental

pain and suffering, loss of earning capacity, and loss of enjoyment in the quality of life, "including any and all disability" which are unspecified. The court also notes the petition from Mr. Tabor for loss of consortium as a result of the injuries to his wife. The damages claim, which is again unspecified, includes damages for grief, mental anguish and loss of consortium and companionship which he sustained and "will continue to sustain as a result of the serious injuries to his wife". These allegations illustrate that it is more likely than not the amount in controversy exceeds $75,000.

Accordingly, having concluded that the amount in controversy requirement is satisfied, the exercise of federal subject matter jurisdiction is appropriate. I **DENY** the Tabors' motion to remand.

The Clerk is directed to forward copies of this order only to counsel of record in civil action 2:09-0191.

ENTER: June 30, 2009

Joseph R. Goodwin, Chief Judge